# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLTON FOSTER**, | : | **CIVIL ACTION NO. 1:14-CV-0391** |
| Petitioner | : | **(Chief Judge Conner)** |
| v. | : | |
| **ERIC HOLDER, ET AL.**, | : | |
| Respondents | : | |

## **MEMORANDUM**

Charlton Foster ("Foster"), presently a detainee of the Bureau of Immigration and Customs Enforcement ("ICE"), incarcerated at the York County Prison, York, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 on March 3, 2014. (Doc. 1). Preliminary review of the petition has been undertaken, see R. GOVERNING § 2254 CASES R.1(b) (applicable to petitions under 28 U.S.C. § 2241 in the discretion of the court), and, for the reasons set forth below, the petition will be denied without prejudice and referred to ICE as a request for review under 8 C.F.R. § 241.13.

## I.  Background

Foster, a native and citizen of Jamaica, entered the United States on or about February 1, 1989, at or near Miami, without inspection or parole. (Doc. 1, at 18.) On January 7, 1992, he was convicted of third degree murder in violation of Title 18, Section 2502 of the Pennsylvania Crime Code, and sentenced to a five to ten year term of imprisonment. (Id.; Doc. 1, ¶12 .) On December 12, 1996, he was ordered

removed from the United States. (Doc. 1, at 18.) On August 3, 1999, he was released from state custody and transferred into ICE custody. (Id.) He was removed from the United States to Jamaica on April 20, 2000. (Id.)

On or about June, 2003, Foster reentered the United States. (Doc. 1, ¶16.) "On April 4, 2010, [he] was encountered by Immigration and Customs Enforcement (ICE) at the Bucks County, Pennsylvania Correctional Facility." (Doc. 1, at 18.) On January 3, 2011, his prior order of removal was reinstated pursuant to Section 241(a)(5) of the Immigration and Nationality Act. (Id.) On September 14, 2010, he was convicted of Re-Entry after Deportation in violation of 8 U.S.C. §§ 1326(a) and (b)(2) in the United States District Court for the Eastern District of Pennsylvania, and sentenced to a forty-six month term of imprisonment. (Doc. 1, at 18.)

On September 11, 2013, he was transferred to ICE custody. (Doc. 1, at 18.) On December 20, 2013, ICE issued a decision to continue custody. (Id.) Therein, Foster was notified that ICE was working to obtain travel documents and that he was to remain in ICE custody pending removal from the United States. He was further notified that "[i]f you have not been released or removed from the United Stated by March 10, 2014, jurisdiction of the custody decision in you case will be transferred to the Headquarters Post Order Unit (HQ POCRU) . . . HQ POCRU will make a final determination regarding your custody." (Id. at 19.)

Foster filed the instant petition requesting review of the lawfulness of his continued detention on March 3, 2014. (Doc. 1, at 1.)

**II.     Discussion**

Detention, release, and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. § 1231.  Under § 1231(a), the Attorney General has ninety days to remove an alien from the United States after his order of removal, during which time detention is mandatory.  Section 1231(a)(1)(B) provides the following:

> The removal period begins to run on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. §1231.  At the conclusion of the ninety-day period, the alien may be held in continued detention, or may be released under continued supervision.  8 U.S.C. §§ 1231(a)(3) & ( 6).  The statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States.  It does not permit indefinite detention." Zadvydas v. Davis, 533 U.S. 678, 689 (2001).  "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699.  To establish uniformity in the federal courts, a period of six months was recognized as a "presumptively reasonable period of detention." Id. at 701.

Following Zadvydas, regulations were promulgated to meet the criteria established by the Supreme Court.  See 8 C.F.R. § 241.4.  Prior to the expiration of the mandatory ninety-day removal period, the district director shall conduct a

custody review for an alien where the alien's removal cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(i). When release is denied pending the removal, the district director may retain responsibility for custody determinations for up to three months, or refer the alien to the Headquarters Post Order Detention Unit ("HQPDU") for further custody review. 8 C.F.R. § 241.4(k)(1)(ii). Once jurisdiction is transferred, an eligible alien may submit a written request for release to the HQPDU asserting the basis for the alien's belief that there is no significant likelihood that he will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(d)(1).

If at the conclusion of the six month period the alien provides good reason to believe that there is no significant likelihood of deportation in the reasonably foreseeable future, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. Not every alien must be released after six months. An alien may still be detained beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

In the matter *sub judice*, the presumptively reasonable six month period has only recently expired. All indications are that jurisdiction to make a determination concerning his custody would now lie with the HQPDU and there is no indication that Foster filed a written request for release with the HQPDU since jurisdiction has been transferred. Consequently, ICE will be ordered to treat this petition as a request for release under 8 C.F.R. §241.13.

**III.   Conclusion**

Based on the foregoing, the petition for writ of habeas corpus will be denied without prejudice.

An appropriate Order follows.

       /S/ CHRISTOPHER C. CONNER  
      Christopher C. Conner, Chief Judge  
      United States District Court  
      Middle District of Pennsylvania

Dated:    March 11, 2014